UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D. SAMUEL GOODELL,                         Case No.: 20-11322
                        Plaintiff,
v.                                         Thomas L. Ludington
                                           United States District Judge
VICKI ERVIN and MICHAEL
LEWIS,
                        Defendants.        Curtis Ivy, Jr.
                                           United States Magistrate Judge
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION
TO DISMISS (ECF No. 24)**

I.      PROCEDURAL HISTORY

Plaintiff D. Samuel Goodell filed this prisoner civil rights action on May 4,

2020, without the assistance of counsel.  (ECF No. 1).  On July 16, 2020, the Court

granted plaintiff's *in forma pauperis* application.  (ECF No. 7).  On September 17,

2020, the Court issued the Order of Partial Dismissal, Directing Service and

Denying as Moot Plaintiff's Motion to Hold in Abeyance.  (ECF No. 9).  In the

Order, the Court dismissed Jason Furst, Heidi Washington, Lupe Castillo, and

SMB Probation Center, Inc. (d/b/a TRI-CAP, Inc.) as defendants.  (*Id.* at

PageID.64).  The Court also dismissed Plaintiff's First Amendment right to privacy

claim and his Fourth Amendment search and seizure claim.  (*Id.*).  Plaintiff's First

Amendment retaliation claims against defendant Vicki Ervin and defendant

Michael Lewis remain.  (*Id.*).

The case was then referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636. (ECF No. 11). Ervin answered the complaint with affirmative defenses. (ECF No. 16). On May 18, 2021, Lewis filed a motion to dismiss (ECF No. 24), to which Plaintiff responded (ECF No. 28), and Lewis replied (ECF No. 29). Ervin then moved for leave to allow concurrence in co-defendant's motion to dismiss (ECF No. 30) and Plaintiff responded. (ECF No. 33). The undersigned granted Ervin's motion and allowed her concurrence with Lewis' motion to dismiss. (ECF No. 34). Thus, the Court will view the arguments within the motion to dismiss (ECF No. 24) as shared arguments of the co-defendants.

For the reasons discussed below, the undersigned **RECOMMENDS** that the motion to dismiss (ECF No. 24) be **DENIED**.

## II.    COMPLAINT ALLEGATIONS

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 alleging violations of the First and Fourth Amendments to the United States Constitution. (ECF No. 1, PageID.10-30). On May 5, 2017, Plaintiff was released from a Michigan state prison to serve his fifteen-month term of parole. (*Id.* at PageID.3-4, ¶ 10). As a condition of his parole, Plaintiff was prohibited from entering Bay County, Michigan without the permission of his parole officer. (*Id.* at PageID.4, ¶ 11). As Plaintiff's resided in that county, he was assigned by the Michigan Department of

Corrections ("MDOC") to live at the TRI-CAP facility in Saginaw, Michigan.  (*Id.* at PageID.4, ¶ 13).  Plaintiff was also required to wear an electronic monitoring device for the first six months of his parole term.  (*Id.* at PageID.4, ¶ 14).  Plaintiff was not permitted to leave the TRI-CAP facility without permission from his parole officer, defendant Michael Lewis.  (*Id.* at PageID.4, ¶ 15).

Plaintiff was transferred to the TRI-CAP facility following his release.  (*Id.* at PageID.4, ¶ 16.).  Upon arrival, Plaintiff learned that he must submit to a strip search, submit a urine sample, allow staff to inspect his property, and "be sprayed with chemicals."  (*Id.* at PageID.4, ¶ 17).  When Lupe Castillo approached Plaintiff with a breathalyzer, Plaintiff asserted that "the conditions of his parole only required him to submit to searches by his parole officer and law enforcement."  (*Id.* at PageID.4-5, ¶¶ 18-21).

Later, Plaintiff informed defendant Vicki Ervin, a residential manager at TRI-CAP, that the conditions of his parole only required him to submit to searches by his parole officer and law enforcement.  (*Id.* at PageID.5, ¶ 23).  Ervin responded he could follow their program or leave.  (*Id.* at PageID.5, ¶ 24).  Plaintiff informed Ervin that the procedures violated his rights, and he would bring suit.  (*Id.* at PageID.5, ¶ 25).  In response, Ervin stated "'you're not going to do anything'" and asked if he would comply.  (*Id.* at PageID.5, ¶ 26).  Aware he was unable to leave without Lewis' permission, Plaintiff complied and reiterated he

3

would bring suit.  (*Id.* at PageID.5-6, ¶¶ 27-28).  Plaintiff then provided his urine

sample to Castillo.  (*Id.*at PageID.6, ¶¶ 32-34).

Following Plaintiff's submission, another staff member told Plaintiff and

Castillo that Plaintiff would not be staying at the facility.  Plaintiff was then

directed to dispose of the sample and wait in the lobby.  After Plaintiff's electronic

monitor began to lose signal, he was allowed outside to regain signal.  (*Id.*at

PageID.6, ¶¶ 35-38).  While outside, Plaintiff's sister Dottie Taylor arrived and

reached out to Lewis after Plaintiff told her what happened.  (*Id.* at PageID.7, ¶

39).

Approximately fifty minutes later, Lewis and Jason Furst arrived at the

facility.  (*Id.* at PageID.7, ¶ 40).  Furst and Lewis arrested Plaintiff and booked him

on a parole violation retainer at the Midland County Jail ("MCC").  (*Id.* at

PageID.7, ¶ 43).  Lewis charged Plaintiff with violating his parole by "engaging in

threatening and intimidating behavior."  (*Id*. at PageID.7, ¶ 44).  According to

Plaintiff, Lewis alleged that Plaintiff's threat to sue was threatening and

intimidating behavior.  (*Id.* at PageID.7, ¶ 45).

Plaintiff's preliminary parole violation hearing was held at the MCC.  (*Id.* at

PageID.8, ¶ 47).  Ervin testified at the hearing.  During her testimony, Ervin

discussed TRI-CAP's intake procedures which include those that Plaintiff

experienced.  (*Id.* at PageID.8, ¶¶ 48-50).  The hearing officer later recommended

to the Parole Board that Plaintiff be found guilty of engaging in threatening and intimidating behavior.  (*Id.* at PageID.8-9, ¶¶ 53).  Plaintiff did not return to prison for a formal parole violation hearing.  The Parole Board found Plaintiff guilty and sentenced him to forty-five days in county jail.  (*Id.* at PageID.9, ¶ 55).  Plaintiff alleges he learned of the Board's decision from his sister.  (*Id.* at PageID.9, ¶ 56).

Plaintiff claims he asked for a copy of the Parole Board's decision to prepare an appeal while in custody, but the Parole Board did not respond.  (*Id.* at PageID.9-10, ¶ 59).  Upon Plaintiff's release, he served the remainder of his parole under the Saginaw Parole Office.  Plaintiff was released from parole on August 6, 2018. (*Id.*at PageID.10, ¶¶ 60-61).

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

Defendant Lewis moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No.24, PageID.132).  When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

5

(concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even

excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

      B.   <u>Discussion</u>

Defendants make two arguments for their dismissal: (1) Plaintiff's retaliation claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and (2) Plaintiff cannot prove the "but for" causation element of retaliation. (ECF No. 24). Plaintiff responds: (1) his claims fall within the *Powers v. Hamilton Cty. Pub Defenders Comm'n*, 501 F.3d 592 (6th Cir. 2007) exception to *Heck*, and (2) that he would not have served jail time "but for" defendants' retaliation for his threat to file suit. (ECF No. 28). The parties reiterated these arguments in further response and reply. (*See* ECF Nos. 29, 30, 33).

    1.  *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that 42 U.S.C. § 1983 plaintiffs cannot proceed with claims challenging a conviction or sentence, unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 487. This principle extends to cases that challenge parole revocation proceedings. *See Noel v. Grzesiak*, 96 F. App'x 353, 354 (6th Cir. 2004); *Norwood v. Michigan Dep't of*

*Corr.*, 67 F. App'x 286, 287 (6th Cir. 2003).  Plaintiff challenges his conviction, alleging it was based on retaliation.  (ECF No.1, PageID.17-18; 20-21).  Plaintiff did not file a habeas petition, nor does he suggest that his conviction was invalidated.  That said, there are a couple of exceptions to *Heck* in this Circuit.

The Sixth Circuit carved out two exceptions to *Heck*'s favorable termination requirement in *Powers v. Hamilton Cty. Pub Defenders Comm'n*, 501 F.3d 592 (6th Cir. 2007).  Plaintiffs can assert § 1983 claims that challenge convictions when: (1) they were precluded from filing a habeas petition while in custody "'as a matter of law,'" or (2) when they challenge procedure and not the conviction itself. *Id.* at 601-03.  Plaintiff does not challenge procedure, so his claims can only survive if he was precluded from habeas redress in custody.  This exception does not apply if plaintiff could have filed a habeas petition in custody but failed to do so.  *Id.*  For example, if a plaintiff was fined and imprisoned for only one day, then habeas was impossible, and Plaintiff can file a § 1983 claim.  *Id.* at 603.

Thus, the question remaining is whether forty-five days was enough time for Plaintiff to challenge his parole revocation.  The undersigned does not believe so. Plaintiff alleges that while in custody, his requests for documents for appeal[1] were ignored by the Parole Board.  (ECF No. 1, PageID.9-10, ¶59).  Even if Plaintiff filed a habeas petition while in custody, it is not clear that the review would be

---

[1] The documents may ultimately be unnecessary.

complete before his release. *See Soldan v. Robinson*, No. 19-11334, 2020 WL 5997309, at *6 (E.D. Mich. July 9, 2020), *report and recommendation adopted*, No. 19-11334, 2020 WL 5993224 (E.D. Mich. Oct. 9, 2020) (extending *Powers* exception to plaintiff incarcerated only forty-three days after parole revocation); *cf*. *Williams v. Caruso*, No. 08-10044, 2009 WL 960198, at *11 (E.D. Mich. Apr. 6, 2009) (refusing to extend *Powers* exception to parolee challenging decision to extend parole several years).

Defendants rely on *Williams v. Caruso* to support their position that Plaintiff was still "in custody" for the remaining fifteen months of his parole and failed to exploit habeas redress, thus the *Powers* exception does not apply. (ECF No. 24, PageID.143). This case is distinct from *Williams*. In *Williams*, after plaintiff's parole was extended for failure to pay restitution, plaintiff challenged the extension while still serving his extended parole sentence. The court found that he was habeas eligible because he was still in custody for the parole extension, and thus *Heck* barred his suit. *Williams*, 2009 WL 960198, at *11. Unlike *Williams*, Plaintiff here served only forty-five days for his parole violation. His parole was not extended for the violation. Thus, Plaintiff was only "in custody" and habeas eligible during his forty-five-day sentence. Given Plaintiff's short sentence, it is unclear if Plaintiff had the same opportunity to appeal.

9

Plaintiff's case is more like *Soldan v. Robinson*, where plaintiff challenged his parole revocation as retaliatory, and plaintiff was in custody for only forty-three days.  His claim could proceed despite *Heck* because it was unclear that plaintiff, who already had issues preparing his appeal, had enough time to challenge his conviction during his short sentence.  *Soldan*, 2020 WL 5997309, at *6.  Like the plaintiff in *Soldan*, Plaintiff here was in custody for less than two months and had issues preparing an appeal.  So it is unclear if he could have received full review before his release.  Even if Plaintiff appealed while in custody, the appeal may have been dismissed upon his release absent serious collateral consequences. *Spencer v. Kemna*, 523 U.S. 1, 14-18 (1998).  Since it is unclear if Plaintiff could have sought habeas relief in custody, his complaint should not be barred by *Heck*.

2.  Protected Conduct and Causation

To establish a claim of First Amendment retaliation, a plaintiff must show (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct[2]; and (3) there is a causal connection between elements one and two; in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

---

[2] Defendants do not address whether Plaintiff's arrest and conviction are adverse actions. As a result, the undersigned assumes the parole revocation is an adverse action that would deter a person of ordinary firmness from engaging in protected conduct.

"Under the third element, 'the subjective motivation of the defendants is at issue.'" *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 399).

  a)  Protected Conduct

Plaintiff was engaged in protected conduct when he threatened to file suit. Plaintiff alleges that he threatened to file suit twice while at TRI-CAP.  (ECF No.1, PageID.5-6).  A prisoner who threatens to sue is engaged in protected activity. *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (reiterating that a threat to sue is protected conduct); *Dean v. Conley*, 1999 WL 1045166, at *2 (6th Cir. Nov. 9, 1999) (holding threat to sue is protected conduct).  Prisoners have a First Amendment right of access to the courts, which includes the right to file civil rights claims. *Thaddeus-X*,175 F.3d at 391.  Plaintiff threatened to file suit, as was his right under the First Amendment.  Plaintiff was engaged in protected conduct.

Defendants cite *Thaddeus-X v. Blatter* to argue that Plaintiff was not engaged in protected conduct because his conduct was a parole violation.  (ECF. No. 29, PageID.268).  Prisoners engaged in otherwise "'protected conduct'" may not be protected if they violate prison rules.  At the same time, this principle applies only when the prison rule is "rationally related to a legitimate penological concern." *Thaddeus-X*, 175 F.3d at 395.  According to Plaintiff's complaint, he did not abuse the grievance system like in *Ward v. Dyke*, where Ward interfered

with prison administration by filing many grievances and appeals. *Ward v. Dyke*,
58 F.3d 271, 274-75 (6th Cir. 1995) (holding Ward's transfer related to valid
penological concerns). Plaintiff alleges he did not inundate staff with threats to
sue, as he only threatened suit twice before his arrest. Rather, Plaintiff's case is
like *Dean v. Conley*, where plaintiff threatened to sue and was convicted of
"threatening and intimidating an employee" soon after, yet the court found that
Dean's threat was protected conduct. *Dean*, 1999 WL 1045166, at *2. Plaintiff
here was also charged with intimidating behavior soon after his threats to sue. So,
at this stage, Plaintiff has sufficiently pleaded protected conduct.

> b) Causal Connection

Defendants argue that Plaintiff has not pleaded necessary "but for"
causation. To defendants, Plaintiff cannot prove that "but for" defendants'
retaliatory animus, Plaintiff would have escaped conviction since the Parole Board
confirmed Plaintiff's guilt. (ECF No. 24, PageID.145). Plaintiff argues that his
conviction is direct evidence of causation because Plaintiff would not have been
arrested but for defendants' retaliation for his threats to sue. (ECF No.28,
PageID.196-98).

To establish causation, Plaintiff must prove that his conviction was
motivated at least in part by his threats to sue. There is causation "if the
[protected] speech motivates an individual actor to take acts that then proximately

12

cause an adverse action." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). The subjective motivation of defendants is central as the "concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment." *Id.* Thus, conduct in retaliation for the exercise of a constitutionally protected right is actionable under § 1983, even if the conduct would have been proper in a different context. *Id.* (quoting *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir.1998)). So, causation becomes a two-part inquiry in which plaintiff must prove "(1) that the adverse action was proximately caused by an individual defendant's acts, . . . but also (2) that the individual taking those acts was 'motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" *Id.* (citations omitted). Defendant may only trigger the ultimate harm, but still may be proximately liable if the third party's actions were foreseeable. *Id.* (quoting *Powers*, 501 F.3d at 609). Since motive can be hard to prove with direct evidence, plaintiffs may rely on circumstantial evidence. *Id.* For example, temporal proximity between the protected conduct and the adverse action can create an inference of motive. *See id.*; *Paige v. Coyner*, 614 F.3d 273, 282–83 (6th Cir. 2010); *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004).

(1) Defendant Vicki Ervin

Plaintiff has sufficiently pleaded plausible causation for defendant Ervin. Plaintiff alleges that after threatening suit, Ervin replied "'you're not going to do anything,'" then complained to Lewis, resulting in Plaintiff's arrest an hour later. (ECF No.1, PageID.16-17).  In *King*, a defendant's report on a prisoner's behavior was the "but for" and proximate cause of an increase in a prisoner's security when the report was the primary source for Plaintiff's punishment and the punishment was a reasonably foreseeable result of the report.  *King*, 680 F.3d at 697-98. Ervin's complaint to Lewis was the "but for" cause of Plaintiff's arrest because her complaint to Lewis was the primary source for Plaintiff's arrest.  Ervin's conduct proximately caused Plaintiff's arrest, as an arrest for conduct in violation of parole is a reasonably foreseeable result of staff complaints to a parole officer.

Plaintiff alleges facts that show Ervin was motivated by his threats to sue. First, Ervin responding negatively to plaintiff's threat to sue can be evidence of retaliatory motive.  *See Paige*, 614 F.3d at 282 (holding defendant's visibly negative response to protected conduct was evidence of retaliatory motive). Second, the undersigned can and will infer retaliatory motive from the timeline outlined in Plaintiff's Complaint.  According to Plaintiff, defendant Lewis arrested Plaintiff only an hour after Ervin's complaint to Lewis about Plaintiff's threats to sue.  (ECF. No. 1, PageID.17, ¶125).  Temporal proximity of less than six months may be evidence of motive.  *See Parnell v. West*, 1997 WL 271751, at *3 (6th Cir.

14

May 21, 1997) (holding seven-month time lag does not support causal link).

Temporal proximity of only an hour between the complaint and Plaintiff's arrest is

short enough to infer motive.  Plaintiff has sufficiently pleaded facts that show

Ervin's conduct proximately caused his arrest and that her conduct was motivated

by his threat to sue.

    (2) Defendant Michael Lewis

    Plaintiff has sufficiently pleaded plausible causation for defendant Lewis.

Plaintiff alleges that after Ervin complained to Lewis, Lewis filed charges against

Plaintiff and arrested him.  (ECF No.1, PageID.20, ¶¶142-43).  Lewis charging

Plaintiff with the parole violation was the "but for" cause of Plaintiff's arrest

because the charge was the primary source for Plaintiff's arrest and conviction.

Lewis' conduct proximately caused Plaintiff's arrest because Plaintiff's arrest is a

reasonably foreseeable result of Lewis charging Plaintiff for his threats to sue.

Like with Ervin, there is close enough temporal proximity to infer Lewis' motive.

Lewis filed charges about an hour after Ervin's complaint.  Plaintiff has

sufficiently pleaded facts that show Lewis' conduct proximately caused his arrest

and that his conduct was motivated by Plaintiff's threats to sue.

    Defendants point to *Nieves v. Bartlett* to argue that Plaintiff has

insufficiently pleaded "but for" causation because his allegations were proven false

by his conviction.  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (holding

plaintiffs must prove the adverse action would not have been taken without retaliatory motive).  Because the Parole Board agreed that Plaintiff's conduct violated his parole, he cannot prove that defendants were motivated by retaliatory animus.  (ECF. No. 24, PageID.144-45).  Defendants' argument is seemingly that of the checkmate doctrine—that Plaintiff's conviction "checkmates" a finding of retaliation.  *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994); *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008); *see also O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011).  That said, the Sixth Circuit has curbed use of the checkmate doctrine at the motion to dismiss stage.  *See Maben*, 887 F.3d at 262-63.  ("we have explicitly rejected the argument that an "administrative determination that [the prisoner] actually committed the . . . misconduct precludes him from being able to establish retaliation.") (citations omitted).  Some courts in this Circuit have found that defendants can call "checkmate" when the plaintiff's complaint does not contain plausible factual allegations of retaliation notwithstanding the conviction.  *See Annabel v. Frost*, No. 14-10244, 2015 WL 1322306, at *7 (E.D. Mich. Feb. 17, 2015), *report and recommendation adopted*, No. 14-10244, 2015 WL 1510680 (E.D. Mich. Mar. 30, 2015), *and report and recommendation adopted*, No. 14-10244, 2016 WL 270294 (E.D. Mich. Jan. 22, 2016).  However, as discussed above, Plaintiff has sufficiently pleaded plausible factual allegations that support a finding of retaliation, notwithstanding his

16

conviction. Therefore, the undersigned finds that defendants' "checkmate" argument lacks merit and Plaintiff has sufficiently pleaded a plausible retaliation claim.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant Lewis' and Defendant Ervin's motion to dismiss (ECF No. 24) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

17

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: December 6, 2021                    s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge

18

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on December 6, 2021.


s/Kristen MacKay
Case Manager
(810) 341-7850