UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D. SAMUEL GOODELL,

          Plaintiff,           Case No. 1:20-cv-11322

v.

                                   Honorable Thomas L. Ludington
VICKI ERVIN and MICHAEL LEWIS,      United States District Judge

         Defendants.         Honorable Curtis Ivy, Jr.
_____/     United States Magistrate Judge

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO DISMISS**

This matter is before this Court upon the Report and Recommendation of Magistrate Judge Curtis Ivy, Jr., ECF No. 35, for the undersigned to deny Defendants' Motion to Dismiss, ECF No. 24. For the reasons explained hereafter, Judge Ivy's Report and Recommendation will be adopted, and Defendant's Motion to Dismiss will be denied.

**I.**

In May 2020, Plaintiff D. Samuel Goodell filed a civil-rights action pro se under 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments of the United States Constitution. ECF No. 1. In September 2020, among other things, this Court dismissed several defendants and two of Plaintiff's claims, leaving only his First Amendment retaliation claims against Defendants Vicki Ervin and Michael Lewis. ECF No. 9 at PageID.64.

In October 2020, this case was referred to Judge Ivy for all pretrial matters. ECF No. 11. In January 2021, Defendant Ervin answered the complaint with affirmative defenses. ECF No. 16. In May 2021, Defendant Lewis filed a motion to dismiss, ECF No. 24, which has since been fully briefed, *see* ECF Nos. 28; 29; 30; 33; 34. On December 6, 2021, Judge Ivy issued his Report and Recommendation. ECF No. 35.

Although the Report states that the parties could object to and seek review of the recommendations within 14 days of service, neither Plaintiff nor Defendants filed any objections. Therefore, they have waived their right to appeal Judge Morris's findings. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 829 (6th Cir. 2007).

II.

A.

In May 2017, Plaintiff was released from a Michigan prison to serve his 15-month term of parole. ECF No. 1 at PageID.3–4. As a condition of his parole, Plaintiff was prohibited from entering Bay County, Michigan without his parole officer's permission. *Id.* at PageID.4. Because Plaintiff's pre-parole residence is in Bay County, the Michigan Department of Corrections (the "MDOC") assigned him to live at the TRI-CAP facility in Saginaw, Michigan. *Id.* Plaintiff was also required to wear an electronic monitoring device for the first six months of his parole. *Id.* Plaintiff was not permitted to leave the TRI-CAP facility without permission from his parole officer, Defendant Lewis. *Id.* Plaintiff was transferred to the TRI-CAP facility following his release. *Id.*

Upon arrival to the TRI-CAP facility, TRI-CAP staff told Plaintiff that he must submit to a strip search, provide a urine sample, allow staff to inspect his property, and "be sprayed with chemicals." *Id.* When Lupe Castillo approached Plaintiff with a breathalyzer, Plaintiff stated that "the conditions of his parole only required him to submit to searches by his parole officer and law enforcement." *Id.* at PageID.4–5. Later, Plaintiff said the same to Defendant Ervin, a residential manager at TRI-CAP. *Id.* at PageID.5. Defendant Ervin responded that Plaintiff could follow the staff's instructions or leave. *Id.*

Plaintiff told Defendant Ervin that he believed the procedures violated his rights, and he planned to bring suit. *Id.* Defendant Ervin exclaimed in response, "'You're not going to do anything,'" then asked Plaintiff if he would comply. *Id.* Aware that he was unable to leave without Defendant Lewis's permission, Plaintiff complied and repeated that he planned to bring suit. *Id.* at PageID.5–6.

While Lupe Castillo gazed at Plaintiff's genitals, he provided a sample as directed. *Id.* at PageID.6. Then another staff member told Plaintiff and Lupe Castillo that Plaintiff "isn't staying." *Id.* Lupe Castillo directed Plaintiff to pour out his urine sample and wait in the lobby. *Id.*

After Plaintiff's electronic monitor began to lose signal, TRI-CAP allowed him to go outside to regain signal. *Id.* While outside, Plaintiff's sister, Dottie Taylor, arrived and called Defendant Lewis after Plaintiff told her what happened. *Id.* at PageID.7.

Approximately 50 minutes later, Defendant Lewis and Jason Furst arrived at the TRI-CAP facility. *Id.* Defendant Lewis and Jason Furst arrested Plaintiff and booked him on a parole-violation retainer at the Midland County Jail (MCC). *Id.* Defendant Lewis charged Plaintiff with violating his parole by "engaging in threatening and intimidating behavior." *Id.* According to Plaintiff, Defendant Lewis alleged that Plaintiff's threat to sue was threatening and intimidating behavior. *Id.*

Plaintiff's preliminary parole violation hearing was held at the MCC. *Id.* at PageID.8. Defendant Ervin testified at the hearing. Defendant Ervin testified that TRI-CAP's intake procedures include those that Plaintiff experienced. *Id.* After Plaintiff informed Hearing Officer Larry Elliot that threatening to sue is constitutionally protected speech, Larry Elliot replied, "We know you have rights. We just don't know what they are." *Id.* Ultimately, Larry Elliot

recommended that the Parole Board find Plaintiff guilty of engaging in threatening and intimidating behavior for threatening to sue. *Id.* at PageID.8–9.

Plaintiff did not return to prison for a formal parole-violation hearing. Instead, the Parole Board found Plaintiff guilty and sentenced him to 45 days in county jail for threatening to bring a claim to protect his constitutional rights. *Id.* at PageID.9. Plaintiff alleges that he learned of the Board's decision from his sister. *Id.* Plaintiff claims that he requested a copy of the Board's decision so he could prepare an appeal while in custody, but the Board did not respond. *Id.* at PageID.9–10. After Plaintiff's release, he served the remainder of his parole under the Saginaw County Parole Office. *Id.* at PageID.10. Plaintiff was released from parole on August 6, 2018. *Id.*

### III.

Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See generally* ECF No. 24. Specifically, Defendants make two arguments for dismissal: (1) Plaintiff's retaliation claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (2) Plaintiff cannot prove the "but for" causation element of his retaliation claim. *Id.* Plaintiff responds (1) that his claims fall within an exception to *Heck* established in the *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592 (6th Cir. 2007); and (2) that he would not have served jail time "but for" Defendants' retaliation for his intent to file suit. ECF No. 28. The parties reiterated these arguments in additional briefing. *See* ECF Nos. 29, 30, 33.

### A.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court construes the pleading in the nonmovant's favor and accepts the motion's factual allegations as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th

Cir. 2008). The movant need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and the court must not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 679–79 (quotations and citation omitted). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.").

Courts must hold pro-se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Yet even when considering pro-se pleadings, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (unpublished) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Indeed, "courts may not rewrite a complaint to include claims that were never presented, nor may courts construct the plaintiff's legal arguments for him. Neither may the court 'conjure up unpled allegations,' nor create a claim for Plaintiff." *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (quoting *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979)) (other citations omitted); *see also Evans v. Mercedes Benz Fin. Servs., LLC*, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

**B.**

The first question is whether *Heck v. Humphrey* bars Plaintiff's retaliation claims.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that 42 U.S.C. § 1983 plaintiffs cannot challenge a conviction or sentence that has not "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 487. This principle includes challenges to parole revocation proceedings, like Plaintiff's claim here. *See Noel v. Grzesiak*, 96 F. App'x 353, 354 (6th Cir. 2004); *Norwood v. Michigan Dep't of Corr.*, 67 F. App'x 286, 287 (6th Cir. 2003). Plaintiff challenges his conviction, alleging that it was based on retaliation. ECF No.1 at PageID.17–18, 20–21. Plaintiff neither requests habeas relief nor alleges that his conviction was invalidated. Even so, there are a couple of exceptions to *Heck* in the Sixth Circuit.

The Sixth Circuit carved out two exceptions to *Heck*'s favorable-termination requirement in *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592 (6th Cir. 2007). A plaintiff may challenge a conviction under § 1983 if: (1) she was precluded from filing a habeas petition while in custody "as a matter of law," or (2) she challenges procedure and not the conviction itself. *Id.* at 601–03.

**i.**

Plaintiff challenges the procedures that led to his incarceration. Plaintiff challenges TRI-CAP's in-processing procedure. *See* ECF No. 1 at PageID.8. Plaintiff also challenges the procedure of his parole-violation hearing. *See id.* at PageID.9. And Plaintiff challenges the Board's post-hearing notification procedure. *See id.* Indeed, challenges to the procedures of a parole-board hearing exemplify the procedural exceptions to *Heck*. *See Powers* at 603–05 ("A conclusion that

the procedures, or rather the lack of procedures, that culminated in Powers's incarceration violated his constitutional rights has nothing to do with the propriety of his underlying conviction.").

For this reason, *Heck* does not bar Plaintiff's Complaint. The remainder of Judge Ivy's analyses and findings are sound, and as explain hereafter, there is no reason to depart from them.

**ii.**

As Judge Ivy correctly analyzed, Plaintiff's claims may also survive if he was precluded from habeas redress while in custody. ECF No. 35 at PageID.335. This exception does not apply if Plaintiff could have filed a habeas petition in custody but failed to do so. *Id.* For example, if a plaintiff was fined and imprisoned for only one day, then habeas would be impossible, so Plaintiff could file a § 1983 claim. *Powers*, at 603. Thus, the remaining question is whether 45 days was enough time for Plaintiff to challenge his parole revocation. Judge Ivy found that 45 days is insufficient. ECF No. 35 at PageID.335. This Court agrees with Judge Ivy.

Plaintiff alleges that while in custody, the Parole Board ignored his requests for documents to appeal its decision. ECF No. 1 at PageID.9–10. Even if Plaintiff filed a habeas petition while in custody, it is not clear whether the review would be complete before his release. *See Soldan v. Robinson*, No. 19-11334, 2020 WL 5997309, at *6 (E.D. Mich. July 9, 2020), *report and recommendation adopted*, No. 19-11334, 2020 WL 5993224 (E.D. Mich. Oct. 9, 2020) (extending *Powers*'s exception to a plaintiff incarcerated for 43 days after parole revocation); *cf. Williams v. Caruso*, No. 08-10044, 2009 WL 960198, at *11 (E.D. Mich. Apr. 6, 2009) (refusing to extend *Powers*'s exception to a parolee challenging a decision to extend his parole by several years). Indeed, according to Westlaw's litigation analytics, in the Eastern District of Michigan, more than 74% of motions to dismiss on § 1983 claims take longer than 90 days to be resolved. Notably, that

timeframe excludes any later stages of litigation. In other words, it would be nigh impossible for Plaintiff to sufficiently challenge his parole-revocation hearing within 45 days.

Defendants rely on *Williams v. Caruso* to support their position that Powers does not apply because Plaintiff was still "in custody" for the remaining 15 months of his parole and failed to exploit habeas redress. ECF No. 24 at PageID.143. But this case is distinct from *Williams*. After the *Williams* plaintiff's parole was extended for failure to pay restitution, he challenged the extension while serving his extended parole sentence. The court found that he was habeas eligible because he was still "in custody" for the parole extension; thus, *Heck* barred his suit. *Williams*, 2009 WL 960198, at *11. By contrast, Plaintiff served 45 days for his parole violation, and his parole was not extended for the violation. For that reason, Plaintiff was "in custody" and habeas eligible only during his 45-day sentence. Given Plaintiff's significantly shorter sentence, Plaintiff would not have had the same opportunity to appeal as the *Williams* plaintiff.

Plaintiff's case is more like *Soldan v. Robinson*, in which the plaintiff challenged his parole revocation as retaliatory, and he was in custody for only 45 days. His claim could proceed despite *Heck*, because it was unclear whether the plaintiff, who already had issues preparing his appeal, had enough time to challenge his conviction during his short sentence. *Soldan*, 2020 WL 5997309, at *6. Like the *Soldan* plaintiff, Plaintiff was in custody for less than two months and had issues preparing his appeal. So he likely could not have received full review before release. Even if Plaintiff appealed while in custody, the appeal might have been dismissed upon his release absent serious collateral consequences. *Spencer v. Kemna*, 523 U.S. 1, 14–18 (1998). Because Plaintiff likely could not have sought habeas relief while in custody, *Heck* does not bar his complaint.

**IV.**

To establish a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct;[1] and (3) there is a causal connection between elements one and two; in other words, that the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam). "Under the third element, 'the subjective motivation of the defendants is at issue.'" *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 399).

### A.

Plaintiff alleges that he threatened to file suit twice while at TRI-CAP. ECF No.1, PageID.5–6.

As Judge Ivy indicated, Plaintiff was engaged in protected conduct when he threatened to file suit. ECF No. 35 at PageID.338. Indeed, a prisoner who threatens to sue is engaged in protected activity. *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (unpublished) (reiterating that a threat to sue is protected conduct); *Dean v. Conley*, 1999 WL 1045166, at *2 (6th Cir. Nov. 9, 1999) (unpublished table decision) (holding that a threat to sue is protected conduct). Prisoners have a First Amendment right of access to the courts, which includes the right to file civil-rights claims. *Thaddeus-X*, 175 F.3d at 391. Plaintiff threatened to file suit, as was his First Amendment right. Therefore, Plaintiff was engaged in protected conduct when he threated to sue Defendants.

Defendants cite *Thaddeus-X* to argue that Plaintiff was not engaged in protected conduct because his conduct was a parole violation. ECF. No. 29 at PageID.268. Indeed, "protected

---

[1] Defendants do not address whether Plaintiff's arrest and conviction are adverse actions. As a result, Judge Ivy assumed the parole revocation is an adverse action that would deter a person of ordinary firmness from engaging in protected conduct. *See* ECF No. 35 at PageID.337 n.2.

conduct" is not protected if it "violates a legitimate prison regulation." *Thaddeus-X*, 175 F.3d at 395. Still, such a regulation must be "rationally related to a legitimate penological concern." *Id.* (citing *Turner v. Safley*, 482 U.S. 78 (1987)). Moreover, it is unclear whether TRI-CAP's in-processing procedures are "prison regulations," as TRI-CAP is a private organization.

According to Plaintiff's complaint, he did not abuse the grievance system like the plaintiff in *Ward v. Dyke*, in which Ward was transferred for interfering with prison administration by filing many grievances and appeals. *Ward v. Dyke*, 58 F.3d 271, 274–75 (6th Cir. 1995) (holding Ward's transfer related to valid penological concerns). Plaintiff alleges that he did not inundate staff with threats to sue, as he only threatened suit twice before his arrest.

Plaintiff's case is like *Dean v. Conley*, in which plaintiff threatened to sue and was then convicted of "threatening and intimidating an employee." 1999 WL 1045166, at *2. The *Dean* court found that Dean's threat was protected conduct. *Id.* at *2. Indeed, Plaintiff was similarly charged with intimidating behavior soon after he threatened to sue. Therefore, at this stage, Plaintiff has sufficiently pleaded protected conduct.

**B.**

Defendants argue that Plaintiff has not pleaded necessary "but for" causation. According to Defendants, Plaintiff cannot prove that "but for" Defendants' retaliatory animus, Plaintiff would have escaped conviction since the Parole Board confirmed Plaintiff's guilt. ECF No. 24 at PageID.145.

Plaintiff argues that his conviction is direct evidence of causation, as he would not have been arrested but for Defendants' retaliation for his threats to sue. ECF No. 28 at PageID.196–98.

To establish causation, Plaintiff must prove that his conviction was motivated at least in part by his threats to sue. There is causation "if the [protected] speech motivates an individual

actor to take acts that then proximately cause an adverse action." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). The defendants' subjective motivation is central, as the "concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment." *Id.* Thus, conduct in retaliation for the exercise of a constitutionally protected right is actionable under § 1983, even if the conduct would have been proper in a different context. *Id.* (quoting *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir. 1998)).

In this way, causation becomes a two-part inquiry in which plaintiff must prove not only "(1) that the adverse action was proximately caused by an individual defendant's acts, . . . but also (2) that the individual taking those acts was 'motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" *Id.* (citations omitted). A defendant that only triggers the ultimate harm may still be proximately liable if the third party's actions were foreseeable. *Id.* (quoting *Powers*, 501 F.3d at 609). Because motive can be hard to prove with direct evidence, plaintiffs may rely on circumstantial evidence. *Id.* For example, temporal proximity between the protected conduct and the adverse action can create an inference of motive. *See id.*; *Paige v. Coyner*, 614 F.3d 273, 282–83 (6th Cir. 2010); *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004).

**i.**

Judge Ivy found that Plaintiff sufficiently pleaded plausible causation for Defendant Ervin. ECF No. 35 at PageID.341.

Plaintiff sufficiently alleges that Defendant Ervin caused his arrest. Plaintiff alleges that after threatening suit, Defendant Ervin replied, "You're not going to do anything," then complained to Defendant Lewis, resulting in Plaintiff's arrest an hour later. ECF No. 1 at PageID.16–17. A defendant's report on a prisoner's behavior may be the "but for" and proximate

cause of an increase in a prisoner's security if the report was the primary source for a reasonably foreseeable punishment. *Zamiara*, 680 F.3d at 697–98. Defendant Ervin's complaint to Defendant Lewis was the "but for" cause of Plaintiff's arrest. Defendant Ervin's complaint was the primary source for Plaintiff's arrest. Defendant Ervin's conduct also proximately caused Plaintiff's arrest. Indeed, arrest is a foreseeable result of reporting a possible parole violation to a parole officer.

Plaintiff also sufficiently alleges that his threats to sue motivated Defendant Ervin. First, Defendant Ervin exclaimed a negative response to Plaintiff's threats to sue, ECF No. 1 at PageID.5, which is evidence of retaliatory motive, *see Paige*, 614 F.3d at 282 (holding that defendant's visibly negative response to protected conduct was evidence of retaliatory motive). Second, Judge Ivy inferred retaliatory motive from the timeline outlined in Plaintiff's Complaint. ECF No. 35 at PageID.341. According to Plaintiff, Defendant Lewis arrested Plaintiff less than one hour after Defendant Ervin told Defendant Lewis about Plaintiff's threats to sue. ECF. No. 1 at PageID.17. Temporal proximity of less than six months may be evidence of motive. *See Parnell v. West*, 114 F.3d 1188 (6th Cir. May 21, 1997) (per curiam) (unpublished table decision) (holding seven-month time lag does not support causal link). Temporal proximity of only one hour between the complaint and Plaintiff's arrest is short enough to infer motive.

For these reasons, Plaintiff has sufficiently pled that Defendant Ervin's conduct proximately caused his arrest and that her conduct was motivated by his threat to sue.

### ii.

Judge Ivy found that Plaintiff sufficiently pleaded plausible causation for Defendant Lewis. ECF No. 35 at PageID.342.

Plaintiff sufficiently alleges that Defendant Lewis caused his arrest. Plaintiff alleges that after Defendant Ervin complained to Defendant Lewis, Defendant Lewis filed charges against

Plaintiff and arrested him. ECF No.1 at PageID.20. Defendant Lewis charging Plaintiff with the parole violation was the "but for" cause of Plaintiff's arrest because the charge was the primary source for Plaintiff's arrest and conviction. Defendant Lewis's conduct also proximately caused Plaintiff's arrest. Indeed, arrest is a reasonably foreseeable result of being charged for a parole violation.

Plaintiff also sufficiently alleges that his threats to sue motivated Defendant Lewis. As with Defendant Ervin, the temporal proximity is small enough to infer Defendant Lewis's motive. *See* discussion *supra* Section IV.B.i. Defendant Lewis filed charges about one hour after Defendant Ervin's complaint.

For these reasons, Plaintiff has sufficiently pled that Defendant Lewis's conduct proximately caused his arrest and that his conduct was motivated by Plaintiff's threats to sue.

**iii.**

One final matter is worth addressing. Defendants point to *Nieves v. Bartlett* to argue that Plaintiff has insufficiently pled "but for" causation because his allegations were proven false by his conviction. 139 S. Ct. 1715, 1722 (2019) (holding that plaintiffs must prove the adverse action would not have been taken without retaliatory motive). According to Defendants, Plaintiff cannot prove that Defendants were motivated by retaliatory animus because the Parole Board agreed with them that Plaintiff's conduct violated his parole. ECF. No. 24, PageID.144-45. In this way, Defendants argue the "checkmate doctrine"—that Plaintiff's conviction "checkmates" a finding of retaliation. *See Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994); *see also O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) (per curiam). But Defendants have backed the wrong horse.

The Sixth Circuit has *en passant* taken the "checkmate doctrine" off the board at the motion-to-dismiss stage. *See Maben v. Thelen*, 887 F.3d 252, 262–63 (6th Cir. 2018) ("Furthermore, in the motion to dismiss context, we have explicitly rejected the argument that an 'administrative determination that [the prisoner] actually committed the . . . misconduct precludes him from being able to establish retaliation.'" (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007)) (brackets in original)). Even so, some district judges in the Sixth Circuit have found that defendants can call "checkmate" if the plaintiff's complaint does not contain plausible factual allegations of retaliation without the conviction. *See, e.g.*, *Annabel v. Frost*, No. 14-10244, 2015 WL 1322306, at *7 (E.D. Mich. Feb. 17, 2015), *report and recommendation adopted*, No. 14-10244, 2015 WL 1510680 (E.D. Mich. Mar. 30, 2015), *and report and recommendation adopted*, No. 14-10244, 2016 WL 270294 (E.D. Mich. Jan. 22, 2016). However, as indicated, Plaintiff has sufficiently pled plausible retaliation without his conviction.

For these reasons, this Court agrees with Judge Ivy that the "checkmate doctrine" does not apply here, and that Plaintiff has sufficiently pleaded a plausible retaliation claim. Consequently, Judge Ivy's Report and Recommendation will be adopted, and Defendants' Motion to Dismiss will be denied.

**V.**

Accordingly, it is **ORDERED** that the Magistrate Judge's Report and Recommendation, , ECF No. 35, is **ADOPTED**.

Further, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 24, is **DENIED**.

Dated: January 19, 2022  s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge